Entered on Docket
September 10, 2012
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes the order of the court. Signed September 7, 2012

Roger L. Efremsky
U.S. Bankruptcy Judge

John Kennedy (SBN 156009)
LINER GRODE STEIN YANKELEVITZ SUNSHINE REGENSTREIF & TAYLOR LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024-3503
Telephone: (310) 500-3500
Facsimile: (310) 500-3501
(jkennedy@linerlaw.com)

Joseph D. Frank (IL Bar No. 6216085)
*admitted pro hac vice*
Jeremy C. Kleinman (IL Bar No. 6270080)
*admitted pro hac vice*
FRANKGECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Telephone: (312) 276-1400
Facsimile: (312) 276-0035
(jfrank@fgllp.com)
(jkleinman@fgllp.com)

*Counsel for CFB Liquidating Corporation, f/k/a Chicago Fire Brick Company, and WFB Liquidating Corporation, f/k/a Wellsville Firebrick Company*

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| **In re**<br><br>**CFB LIQUIDATING CORPORATION, f/k/a CHICAGO FIRE BRICK CO., an Illinois Corporation, *et al.*,**<br><br>**Debtors.** | Case No. 01-45483 RLE<br><br>Chapter 11<br><br>Jointly Administered<br><br>Honorable Roger L. Efremsky<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF CFB LIQUIDATING CORPORATION, F/K/A CHICAGO FIRE BRICK COMPANY, AND WFB LIQUIDATING CORPORATION, F/K/A WELLSVILLE FIRE BRICK COMPANY, AS MODIFIED** |

This matter came before the Court for hearing on September 6, 2012 (the "Confirmation Hearing"), on the request of CFB Liquidating Corporation f/k/a Chicago Fire Brick Company ("CFB") and WFB Liquidating Corporation f/k/a Wellsville Fire Brick Company ("WFB" and, together with CFB, the "Debtors") for entry of an order confirming the Joint Chapter 11 Plan of Liquidation of CFB Liquidating Corporation f/k/a Chicago Fire Brick Company and WFB Liquidating Corporation, f/k/a Wellsville Fire Brick Company as Modified (as it may be further modified or amended, the "Plan") and approval of the transactions set forth therein, pursuant to sections 363 and 1129 of the United States Bankruptcy Code, (11 U.S.C. §§ 101 *et seq.*, hereinafter the "Bankruptcy Code"),[1] and Rule 9019 of the Federal Rules of Bankruptcy Procedure.[2]

The Court has considered the Plan, the Declarations submitted in support of the Plan by the Debtors, the Memorandum of Points and Authorities in Support of Confirmation of the Joint Chapter 11 Plan of Liquidation of CFB Liquidating Corporation f/k/a Chicago Fire Brick Company and WFB Liquidating Corporation, f/k/a Wellsville Fire Brick Company as Modified [Docket No. 444] (the "Brief") and the statements of all interested counsel with respect to the foregoing.

The Court has also reviewed the Debtor's Certificate of Service filed with respect to service of the court-approved notice of the Confirmation Hearing (the "Confirmation Hearing Notice") and solicitation packages, to the extent appropriate [Docket No. 431], the Affidavit and Verification of Publication, confirming publication of the Confirmation Hearing Notice in the national edition of *USA Today* on June 12, 2012, and again on June 15, 2012 [Docket No. 432], the Debtors' Ballot Tabulation Report [Docket No. 447]., the Declaration of Jeremy C. Kleinman, certifying the acceptances and rejections of the Plan [Docket No. 448], all in accordance with the Court's Order: (I) Approving the Debtors' Disclosure Statement with Respect to the Joint Chapter 11 Plan of CFB

---

[1] All section references herein, if not otherwise designated, refer to the Bankruptcy Code.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Plan.

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Liquidating Corporation f/k/a/ Chicago Fire Brick Company and WFB Liquidating Corporation f/k/a Wellsville Fire Brick Company, as Modified; (II) Setting Hearing on Confirmation of the Debtors' Proposed Plan and (III) Setting Deadlines and Approving Procedures, Forms of Notice and Ballots Relating thereto [Docket No. 424] (the "Disclosure Statement Approval Order"), and concludes that good and sufficient notice of the Confirmation Hearing was given to all parties in interest.

After due deliberation and sufficient cause appearing therefor, the Court hereby makes the following Findings of Fact and Conclusions of Law (the "Findings and Conclusions").[3]

## I. PRELIMINARY FINDINGS AND CONCLUSIONS

### A. Jurisdiction.

1. The Court has jurisdiction to conduct the Confirmation Hearing and to confirm the Plan pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto.

2. Each of the Debtors was and is qualified to be a debtor under section 109(a) of the Bankruptcy Code, and each of the Debtors is a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code.

3. Each of the conditions precedent to confirmation of the Plan and entry of the Confirmation Order has been satisfied in accordance with section 14.1 of the Plan.

### B. Judicial Notice.

4. This Court takes judicial notice of the docket of the Debtors' chapter 11 cases (the "Cases") maintained by the Clerk of the Court, and all pleadings and other documents filed, all orders entered, and evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Cases.

[3] These Findings and Conclusions constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rules 7052 and 9014. Any finding of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

## II. FINDINGS OF FACT

### A. Procedural Background

5. The Debtors filed voluntary petitions for relief under the Bankruptcy Code on October 10, 2001 (the "Petition Date"), in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"). The Debtors' parent, National Refractories and Minerals Corporation, ("NRMC"), and affiliates NAT Liquidation Corporation, f/k/a National Affiliated Technologies, Inc. ("NAT"), and National Refractories and Minerals, Inc.("NRMI") (collectively, the "National Refractories Debtors") also filed voluntary petitions on the Petition Date.

6. As of the Petition Date, the Debtors were subject to thousands of asbestos-related personal injury claims ("Asbestos Claims") asserting millions of dollars of liabilities. The Bankruptcy Court established a bar date of February 18, 2002 for the assertion of claims in each of the Debtors' and National Refractories Debtors' bankruptcy cases. Because February 18, 2002 was a federal holiday, the bar date for the filing of claims was extended to February 19, 2002 (the "Bar Date"). Over 1,300 claims were filed against the Debtors prior to the Bar Date. Among these claims were claims filed by law firms that each filed a single claim on behalf of hundreds of claimants. As a result, on or before the Bar Date, the Debtors received claims filed by, or on behalf of, over 20,000 holders of Asbestos Claims.

7. On September 18, 2002, the Bankruptcy Court approved the appointment of Bradley L. Sharp as the Responsible Individual for the chapter 11 estates of each of the Debtors and the National Refractories Debtors. Mr. Sharp has continued in that capacity throughout the duration of the Debtors' cases.

8. Following his appointment, Mr. Sharp pursued the sale of the operating assets of the Debtors and the National Refractories Debtors. After substantial marketing efforts, Mr. Sharp completed sales of those assets in late 2002 and early 2003 (collectively, the "Asset Sales").

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 4 of 33

9. Following the Asset Sales, the Debtors and National Refractories Debtors possessed few remaining assets. These assets consisted primarily of the proceeds from the Asset Sales and certain insurance policies that provide coverage for Asbestos Claims that have been asserted against CFB.

10. On December 15, 2006, the Debtors and the National Refractories Debtors filed their Motion for Order Authorizing (I) Pro-Rata Distribution on Account of Allowed Chapter 11 Expenses of Administration, (II) Dismissing Chapter 11 Cases Pursuant to 11 U.S.C. §§ 105(a), 349(b) and 1112(b); and (III) Directing Post-Dismissal Service of Notice of Insurance-Related Claims [*In re National Refractories and Minerals Corporation, et al*., Case No. 01-45482, Docket No. 1366] (the "Distribution Motion"). In the Distribution Motion, the Debtors and National Refractories Debtors sought authority to wind down their estates by making *pro rata* distributions from available assets to administrative expense claimants, designating a service agent for complaints against the Debtors asserting Asbestos Claims and, thereafter, dismissing the Debtors' and the National Refractories Debtors' bankruptcy cases.

11. On January 4, 2007, the Bankruptcy Court entered the Order Granting Debtors' Motion for Order Authorizing (I) Pro-Rata Distribution on Account of Allowed Chapter 11 Expenses of Administration, (II) Dismissing Chapter 11 Cases Pursuant to 11 U.S.C. §§ 105(a), 349(b) and 1112(b); and (III) Directing Post-Dismissal Service of Notice of Insurance-Related Claims [*In re National Refractories and Minerals Corporation, et al*., Case No. 01-45482, Docket No. 1369]. (the "Distribution Order"). Pursuant to the Distribution Order, the Debtors and the National Refractories Debtors made *pro-rata* distributions to holders of allowed administrative claims.

12. On November 17, 2008, Mr. Sharp dismissed only the bankruptcy cases of the National Refractories Debtors, explaining to the Bankruptcy Court that, in light of productive settlement discussions with the Debtors' insurance carriers, Mr. Sharp wished to keep the Debtors' cases open.

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 5 of 33

13. After CFB filed its own proposed chapter 11 plan in 2009 and received objections to that plan, the Debtors filed the current Plan, as modified, on June 1, 2012. The Plan is dated and identifies the name of the submitting entity, in accordance with Bankruptcy Rule 3016(b).

14. On June 4, 2012, the Bankruptcy Court entered an order establishing a supplemental bar date of July 16, 2012 (the "Supplemental Bar Date"), for any claimant holding an Asbestos Claim who was unaware of the condition(s) giving rise to his or her claim on or before February 19, 2002. The Debtors received over 700 additional claims prior to the Supplemental Bar Date.

**B. Summary of the Plan**

15. The cornerstones of the Plan are (i) the creation of a liquidating trust (the "Liquidating Trust"), to which all of the Class 3 Bar Date Asbestos Personal Injury Claims, and all Class 4 Supplemental Bar Date Asbestos Personal Injury Claims against the Debtors (collectively, "Trust Claims") will be channeled for resolution and payment, and (ii) the proposed insurance policy buyback settlement transactions with four insurance carriers (collectively, the "Insurance Settlements") which will provide over $16 million from which the Liquidating Trust can fund distributions to holders of Trust Claims.

16. The Plan also includes a settlement option granted in favor of a fifth insurer, Continental Casualty Company ("Continental"), pursuant to which Continental may elect, at any time prior to the Effective Date of the Plan, to enter into an insurance policy buyback and settlement transaction similar in form to the Debtors' Insurance Settlements, in exchange for the payment of 100% of remaining policy limits (the "Continental Settlement Option").

17. The Plan requires all holders of Trust Claims to file a claim form with the Liquidating Trust, together with supporting documentation, as required by the Debtors' proposed Liquidating Trust Distribution Procedures (the "TDP"). The Liquidating Trust shall resolve and pay the Trust Claims in accordance with the TDP.

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 6 of 33

18. The Liquidating Trust will be funded from the proceeds of the insurance settlements incorporated into the Plan and the proceeds from the Debtors' additional claims and rights against non-settling insurers. Because the Debtors lack assets unrelated to their insurance rights, unsecured trade creditors will not receive any payment on account of their claims.

**C. The Plan Solicitation Process**

19. On June 4, 2012, the Bankruptcy Court entered the Disclosure Statement Approval Order, establishing requirements and approved forms of notice for the solicitation of votes on the Plan among those classes of creditors entitled to vote.

20. Consistent with the requirements of the Disclosure Statement Approval Order, on June 14, 2012, the Debtors provided the Confirmation Hearing Notice to all known creditors and other parties in interest and mailed 46 solicitation packages by first-class mail, postage prepaid to those creditors entitled to vote, either directly or through counsel. In addition, the Confirmation Hearing Notice, was published in USA Today on June 12, 2012 and June 15, 2012.

**D. Balloting Results With Respect to the Plan**

21. As set forth in the Ballot Tabulation Report, Ballots were received from or on behalf of 4,374 holders of Class 3 Bar Date Asbestos Personal Injury Claims. Of these ballots, 100% were cast in favor of the Plan. Ballots were also received from or on behalf of 664 holders of Class 4 Supplemental Bar Date Asbestos Personal Injury Claims. Of these ballots, 100% were cast in favor of the Plan.

22. Based on the votes cast in favor of the Plan by the Class 3 and Class 4 Claimants who voted and the assigned value of the claims underlying such ballots, as provided for in the Solicitation Procedures previously approved by this Court, the Plan has received sufficient votes to have been accepted by holders of not less than two-thirds (2/3) in amount and one-half (1/2) in number of Class 3 Bar Date Asbestos Personal Injury Claims, and at least two-thirds in amount and one-half in number of Class 4 Supplemental Bar Date Asbestos Personal Injury Claims.

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 7 of 33

**E. Required Findings Under The Plan**

23. As required by Section 14.1 of the Plan, and based upon the Court's review of the record in this case and the evidence adduced at the Confirmation Hearing, the Court makes the legal conclusions enumerated below:

## III. CONCLUSIONS OF LAW

### A. Compliance of the Plan With Requirements for Confirmation under Section 1129

#### 1. Section 1129(a)(1) – Plan Compliance with the Provisions of the Bankruptcy Code

24. The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1).

25. As required by section 1122(a), Article 4 of the Plan classifies each Claim against and Equity Interest in the Debtors into a class containing only substantially similar Claims or Equity Interests. A reasonable basis exists for the classification scheme employed by the Plan, and the Debtors' classification of Claims and Equity Interests is fair and reasonable.

26. Pursuant to section 1123(a)(1), Article 4 of the Plan properly classifies all Claims against the Debtors, excepting Claims of a kind specified in sections 507(a)(1), 507(a)(2), or 507(a)(8) of the Bankruptcy Code.

27. Pursuant to section 1123(a)(2), Article 5 of the Plan properly identifies and describes the treatment of each class of Claims and Equity Interests that is not impaired under the Plan.

28. Pursuant to section 1123(a)(3), Article 5 of the Plan properly identifies and describes the treatment of each class of Claims or Equity Interests that is impaired under the Plan.

29. Pursuant to section 1123(a)(4), the Plan provides the same treatment for each Claim or Equity Interest in a particular class, unless the holder of a particular Claim or Equity Interest agrees to a less favorable treatment of such particular Claim or Equity Interest.

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 8 of 33

30. In accordance with section 1123(a)(5), the Plan provides adequate means for its execution and implementation, including, without limitation, the creation of the Liquidating Trust, the transfers of assets from which Trust Claims can be paid on and after the Effective Date to the Liquidating Trust by the Debtors and Settling Insurers, and the adoption and implementation of the TDP to govern the evaluation and payment of Trust Claims.

31. Pursuant to section 1123(a)(6), the Plan does not involve or contemplate the issuance of non-voting equity securities in the Debtors or the Liquidating Trust.

32. In accordance with section 1123(a)(7), the provisions of the Plan, the Liquidating Trust Agreement and the TDP regarding the selection of the initial Trustee of the Liquidating Trust are consistent with the interests of the holders of Claims and Equity Interests and with public policy.

33. Pursuant to section 1123(b)(1), the Plan impairs or leaves unimpaired, each class of Claims, secured or unsecured, or of Interests.

34. In accordance with section 1123(b)(2), the Plan provides for the rejection of any unexpired lease or executory contract that has not been assumed by the Debtors with the Court's approval on or prior to the Effective Date, except those executory contracts and unexpired leases that the Debtors designate as being subject to assumption in connection with the Effective Date.

35. In accordance with section 1123(b)(3), the Plan provides for the settlement, adjustment or pursuit of all claims and interests belonging to the Debtors or their Estates.

36. In accordance with section 1123(b)(6), the Plan includes other appropriate provisions not inconsistent with the Bankruptcy Code, including, without limitation:

a. The Debtors and/or Liquidating Trust will possess Cash necessary to satisfy Allowed Administrative Expense Claims on the Effective Date, or as otherwise required by the Plan;

b. The Debtors and/or Liquidating Trust will possess Cash necessary to satisfy Allowed Claims in Classes 1 and 2 on the Effective Date;

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 9 of 33

c. The Debtors and/or Liquidating Trust will possess Cash necessary to cure any existing defaults relating to all executory contracts and unexpired leases assumed pursuant to the terms of the Plan; and

d. The Plan consists of and incorporates a series of agreements negotiated among the Debtors and other entities to ensure the success and the feasibility of the Plan.

**2. Section 1129(a)(2) – Debtors' Compliance with the Provisions of the Bankruptcy Code**

37. The Debtors have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2).

38. Mr. Sharp, as the Responsible Individual for the Debtors, has the authority to propose and execute the Plan on the Debtors' behalf and to enter into the transactions proposed therein.

**3. Section 1129(a)(3) – Proposal of the Plan is in Good Faith**

39. The Plan, including each of the Insurance Settlements and the Continental Settlement Option incorporated therein, has been proposed in good faith and not by any means forbidden by law in accordance with section 1129(a)(3).

**4. Section 1129(a)(4) – Approval of Certain Payments as Reasonable.**

40. All payments by the Debtors' bankruptcy estates for costs and services to the estates in connection with the Debtors' bankruptcy cases, or in connection with the Plan and incident to the these cases, to representatives, consultants, professionals and others, the approval of which is required under the Bankruptcy Code, either have previously been approved by the Court or remain subject to approval by the Court as reasonable, and were adequately disclosed in the Plan and the Disclosure Statement and exhibits thereto or have been disclosed prior to or at the Confirmation Hearing.

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 10 of 33

**5. Section 1129(a)(5) – Disclosure of Identity and Affiliations of Proposed Liquidating Trustee and Proposed Compensation of Insiders is Consistent with The Interests of Creditors and Equity Interests and Public Policy**

41. The Debtors have duly and properly disclosed the identity and affiliations of the proposed initial trustee of the Liquidating Trust. The appointment of the initial trustee is consistent with the interests of the Creditors and Equity Interests and with public policy.

**6. Section 1129(a)(6) – Approval of Rate Changes**

42. The Debtors are not operating any business, will not operate a business after Plan confirmation and do not, in the Plan, provide for the establishment of rates over which any regulatory commission has or will have jurisdiction after confirmation of the Plan.

**7. Section 1129(a)(7) – Best Interests of Holders of Claims and Equity Interests**

43. In accordance with section 1129(a)(7), each holder of a claim or interest in an impaired class has accepted the plan or will receive at least as much under the plan as such holder would in a liquidation of the debtors under chapter 7 of the Bankruptcy Code.

**8. Section 1129(a)(8) and Section 1129(b) – Acceptance of the Plan and/or Cramdown by Each Class Entitled to Vote for the Plan**

44. With respect to Classes 3 and 4, Creditors that hold at least two-thirds in amount and more than one-half in number of the Allowed Claims have accepted the Plan. Holders of Claims in Class 5 are not expected to receive any distribution on account of their claims and are therefore deemed to reject the Plan.

45. Although the Debtors cannot satisfy the requirements of section 1129(a)(8) with respect to Class 5 Claimants, the Debtors have elected to "cram down" Class 5 pursuant to section 1129(b)(1). In connection therewith, this Court finds that the Plan is fair and equitable with respect to Class 5 Claimants and does not discriminate unfairly against Class 5 Claimants.

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

**9. Section 1129(a)(9) – Treatment of Priority Claims**

46. The Plan provides for the treatment of Administrative Expense Claims, Priority Tax Claims and Claims entitled to priority pursuant to sections 507(a)(3) – (8) of the Bankruptcy Code in the manner required by section 1129(a)(9).

**10. Section 1129(a)(10) – Acceptance of the Plan by at Least One Impaired Class**

47. The Plan has been accepted by both Classes 3 and 4, as determined without including any acceptance of the Plan by any insider.

**11. Section 1129(a)(11) – Feasibility of the Plan**

48. Confirmation of the Plan is not likely to be followed by the subsequent liquidation, or the need for further financial reorganization of the Debtors or the Liquidating Trust.

**12. Section 1129(a)(12) – Payment of Bankruptcy Fees**

49. All fees payable under 28 U.S.C. § 1930, if any, have been paid or will be paid on the Effective Date. The Debtors and/or Liquidating Trust will possess Cash necessary to pay any fees payable under 28 U.S.C. § 1930, as determined by the Court at the Confirmation Hearing.

**13. Section 1129(a)(13) – Retiree Benefits**

50. The Debtors have no obligation to pay retiree benefits, as that term is defined in section 1114.

**14. Section 1129(d) – Principal Purpose Not Tax Avoidance**

51. No party in interest, including, without limitation, any governmental unit or taxing authority, has requested that the Court deny confirmation of the Plan on grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 and the primary purpose of the Plan is not such avoidance. Accordingly, the Plan satisfies the requirements of section 1129(d).

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 12 of 33

### B. Approval of the Transactions, Settlements, Releases And Injunctions Provided Under the Plan

52. Pursuant to Section 8.1 of the Plan, on the Effective Date, the Debtors shall be authorized to transfer all property of their estates, including the proceeds from the Insurance Settlements, to the Liquidating Trust, free and clear of all Claims and interests, but subject to the obligations and provisions set forth in the Plan and this Confirmation Order. Effective upon the Effective Date, these transfers constitute legal, valid and effective transfers of property that vest the Liquidating Trust with good title to such property free and clear of all liens, claims, encumbrances or interests of any person, except as expressly provided in the Plan or this Confirmation Order.

53. The Plan incorporates the Debtors' Insurance Settlements with four insurers: Hartford Accident and Indemnity Company ("Hartford"), Bituminous Casualty Corporation ("Bituminous"), ACE Insurance Company ("ACE") and Safety National Casualty Company ("Safety National," and together with Hartford, Bituminous and ACE, the "Settling Insurers"). Each of these Insurance Settlements involves the Debtors' sale pursuant to section 363(b) of the insurance policies issued to or for the benefit of the Debtors by the particular Settling Insurer, free and clear of all liens, claims and interests pursuant to section 363(f), with such liens, claims and interests attaching to the proceeds thereof. Each Insurance Settlement also contemplates the settlement and resolution of all of the Debtors' claims relating to these policies, pursuant to Bankruptcy Rule 9019.

#### 1. <u>The Debtors' Settlement with Hartford</u>

54. As set forth in section 9.1 of the Plan, Hartford has agreed to pay $9,191,305.20 (the "Hartford Payment") in order to repurchase the policies it issued to, or for the benefit of the Debtors (the "Hartford Policies") and in resolution of all claims relating to those policies. The Court finds that the Hartford Payment constitutes good and fair consideration for the sale of the Hartford Policies.

55. Furthermore, the Hartford Policies may be sold free and clear of liens, claims, interests and encumbrances under section 363(f) because, in each case, one or more of the criteria set forth in

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 13 of 33

sections 363(f)(1)-(5) have been satisfied. Without limiting the generality of the foregoing, those holders of interests in or against any of the Hartford Policies who did not object, or who withdrew their objections, to the Plan or the relief requested therein, are deemed to have consented pursuant to section 363(f)(2). Any holder of an interest in the Hartford Policies may also be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Interest as contemplated by section 363(f)(5) of the Bankruptcy Code. Accordingly, as part of the Plan, the Court hereby approves the sale of Hartford Policies to Hartford free and clear of all liens, claims and interests pursuant to sections 363(b) and (f).

56. To the extent that Persons hold an interest in the individual Hartford Policies, such interest is adequately protected as required by section 363(e) by the attachment of such interest to the proceeds of sale.

57. The Debtors' Insurance Settlement with Hartford provides substantial benefits and reasonably equivalent value to the Debtors' estates, eliminates the delay, uncertainty and expense of further litigation among the Debtors, Hartford and Trust Claimants regarding the parties' obligations under the Hartford Policies or otherwise regarding the subject matter of the Agreement, and advances the orderly, economical and expeditious resolution of the Debtors' cases. The results obtained through the Insurance Settlement with Hartford are within the reasonable range of potential outcomes if the Debtors were to litigate the matters resolved by this Insurance Settlement, represent fair and reasonable consideration for the sale of the Hartford Policies, and ensure a substantial payment to the Debtors that will be used to enhance distributions to holders of Trust Claims, which payment is reasonable in relation to the potential results that could be achieved by the Debtors pursuing their claims against Hartford in litigation.

58. The sale of the Hartford Policies constitutes a good faith transfer for reasonably equivalent value and fair consideration for purposes of section 548 of the Bankruptcy Code and/or comparable provisions of applicable non-bankruptcy law.

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

59. The Debtors' Insurance Settlement with Hartford is a fair, reasonable and equitable compromise and settlement of Hartford's Policies and the Debtors' claims thereunder, after consideration of: (a) the Debtors' probability of success in litigation, with due consideration for uncertainties in fact and law; (b) the complexity and likely duration of litigation and any attendant expenses, inconvenience and delay; (c) the interests of creditors; and (d) the extent to which the Insurance Settlement is the product of arm's-length bargaining and not the product of fraud or collusion. The Insurance Settlement between the Debtors and Hartford has been reached in good faith and, when consummated in accordance with this Order, will have been consummated in good faith. The Insurance Settlement represents a valid and proper exercise of the Debtors' sound business judgment. There has been no self-dealing, bad faith, fraud or undue influence in connection with the Insurance Settlement, the Plan, or the implementation of the compromise settlement thereby. The Insurance Settlement was negotiated and proposed, and has been entered into by the parties, in good faith, from arm's-length bargaining positions, and without collusion. Each Party to the Insurance Settlement was represented by independent and experienced counsel of their own choice during the negotiations. The sale consideration to be realized by the Debtors pursuant to the Insurance Settlement with Hartford is fair, reasonable and adequate. All payments to be made by Hartford and any other agreements entered into by Hartford in connection with this transaction have been disclosed. As such, Hartford is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and a "Released Party" as defined in section 1.69 of the Plan and is entitled to all of the protections provided under section 363(m) and section 7.3 of the Plan. Neither the Debtors nor Hartford has engaged in any conduct that would cause or permit the Plan, the Insurance Settlement, or the sale of the Hartford Policies, to be avoided under section 363(n).

**2. <u>The Debtors' Settlement with Bituminous</u>**

60. As set forth in section 9.2 of the Plan, Bituminous has agreed to pay $1,585,394.63 (the "Bituminous Payment") in order to repurchase the policies it issued to, or for the benefit of the

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Debtors (the "Bituminous Policies") and in resolution of all claims relating to those policies. The Court finds that the Bituminous Payment constitutes good and fair consideration for the sale of the Bituminous Policies. Furthermore, the Bituminous Policies may be sold free and clear of liens, claims, interests and encumbrances under section 363(f) because, in each case, one or more of the criteria set forth in sections 363(f)(1)-(5) have been satisfied. Without limiting the generality of the foregoing, those holders of interests in or against any of the Bituminous Policies who did not object, or who withdrew their objections, to the Plan or the relief requested therein, are deemed to have consented pursuant to section 363(f)(2). Any holder of an interest in the Bituminous Policies may also be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Interest as contemplated by section 363(f)(5). Accordingly, as part of the Plan, the Court hereby approves the sale of Bituminous Policies to Bituminous free and clear of all liens, claims and interests pursuant to sections 363(b) and (f).

61. To the extent that Persons hold an interest in the individual Bituminous Policies, such interest is adequately protected as required by section 363(e) by the attachment of such interest to the proceeds of sale.

62. The Debtors' Insurance Settlement with Bituminous provides substantial benefits and reasonably equivalent value to the Debtors' estates, eliminates the delay, uncertainty and expense of further litigation among the Debtors, Bituminous and Trust Claimants regarding the parties' obligations under the Bituminous Policies or otherwise regarding the subject matter of the Agreement, and advances the orderly, economical and expeditious resolution of the Debtors' cases. The results obtained from the Insurance Settlement with Bituminous are within the reasonable range of potential outcomes if the Debtors were to litigate the matters resolved by this Insurance Settlement, represent a fair and reasonable consideration for the sale of the Bituminous Policies, and ensure a substantial payment to the Debtors that will be used to enhance distributions to holders of

Trust Claims, which payment is reasonable in relation to the potential results that could be achieved by the Debtors pursuing their claims against Bituminous in litigation.

63. The sale of the Bituminous Policies constitutes a good faith transfer for reasonably equivalent value and fair consideration for purposes of section 548 and/or comparable provisions of applicable non-bankruptcy law.

64. The Debtors' Insurance Settlement with Bituminous is a fair, reasonable and equitable compromise and settlement of the Bituminous Policies and the Debtors' claims thereunder, after consideration of: (a) the Debtors' probability of success in litigation, with due consideration for uncertainties in fact and law; (b) the complexity and likely duration of litigation and any attendant expenses, inconvenience and delay; (c) the interests of creditors; and (d) the extent to which the Insurance Settlement is the product of arm's length bargaining and not the product of fraud or collusion. The Insurance Settlement between the Debtors and Bituminous has been reached in good faith and, when consummated in accordance with this Order, will have been consummated in good faith. The Insurance Settlement represents a valid and proper exercise of the Debtors' sound business judgment. There has been no self-dealing, bad faith, fraud or undue influence in connection with the Insurance Settlement, the Plan, or the implementation of the compromise settlement thereby. The Insurance Settlement was negotiated and proposed, and has been entered into by the parties, in good faith, from arm's-length bargaining positions, and without collusion. Each Party to the Insurance Settlement was represented by independent and experienced counsel of their own choice during the negotiations. The sale consideration to be realized by the Debtors pursuant to the Insurance Settlement with Bituminous is fair, reasonable and adequate. All payments to be made by Bituminous and any other agreements entered into by Bituminous in connection with this transaction have been disclosed. As such, Bituminous is a good faith purchaser within the meaning of section 363(m) and a "Released Party" as defined in section 1.69 of the Plan and is entitled to all of the protections provided under section 363(m) of the Bankruptcy Code and section 7.3 of the Plan.

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 17 of 33

Neither the Debtors nor Bituminous has engaged in any conduct that would cause or permit the Plan, the Insurance Settlement, or the sale of the Bituminous Policies, to be avoided under section 363(n).

**3. The Debtors' Settlement with ACE**

65. As set forth in section 9.3 of the Plan, ACE has agreed to pay $797,296.54 (the "ACE Payment") in order to repurchase the policies it issued to, or for the benefit of the Debtors (the "ACE Policies") and in resolution of all claims relating to those policies. The Court finds that the ACE Payment constitutes good and fair consideration for the sale of the ACE Policies. Furthermore, the ACE Policies may be sold free and clear of liens, claims, interests and encumbrances under section 363(f) because, in each case, one or more of the criteria set forth in sections 363(f)(1)-(5) have been satisfied. Without limiting the generality of the foregoing, those holders of interests in or against any of the ACE Policies who did not object, or who withdrew their objections, to the Plan or the relief requested therein, are deemed to have consented pursuant to section 363(f)(2). Any holder of an interest in the ACE Policies may also be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Interest as contemplated by section 363(f)(5) of the Bankruptcy Code. Accordingly, as part of the Plan, the Court hereby approves the sale of the ACE Policies to ACE free and clear of all liens, claims and interests pursuant to sections 363(b) and (f).

66. To the extent that Persons hold an interest in the individual ACE Policies, such interest is adequately protected as required by section 363(e) of the Bankruptcy Code by the attachment of such interest to the proceeds of sale.

67. The Debtors' Insurance Settlement with ACE provides substantial benefits and reasonably equivalent value to the Debtors' estates, eliminates the delay, uncertainty and expense of further litigation among the Debtors, ACE and Trust Claimants regarding the parties' obligations under the ACE Policies or otherwise regarding the subject matter of the Agreement, and advances the orderly, economical and expeditious resolution of the Debtors' cases. The results obtained from the Insurance Settlement with ACE are within the reasonable range of potential outcomes if the Debtors

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

were to litigate the matters resolved by this Insurance Settlement, represent fair and reasonable consideration for the sale of the ACE Policies, and ensure a substantial payment to the Debtors that will be used to enhance distributions to holders of Trust Claims, which payment is reasonable in relation to the potential results that could be achieved by the Debtors pursuing their claims against ACE in litigation.

68. The sale of the ACE Policies constitutes a good faith transfer for reasonably equivalent value and fair consideration for purposes of section 548 of the Bankruptcy Code and/or comparable provisions of applicable non-bankruptcy law.

69. The Debtors' Insurance Settlement with ACE is a fair, reasonable and equitable compromise and settlement of the ACE Policies and the Debtors' claims thereunder, after consideration of: (a) the Debtors' probability of success in litigation, with due consideration for uncertainties in fact and law; (b) the complexity and likely duration of litigation and any attendant expenses, inconvenience and delay; (c) the interests of creditors; and (d) the extent to which the Insurance Settlement is the product of arm's-length bargaining and not the product of fraud or collusion. The Insurance Settlement between the Debtors and ACE has been reached in good faith and, when consummated in accordance with this Order, will have been consummated in good faith. The Insurance Settlement represents a valid and proper exercise of the Debtors' sound business judgment. There has been no self-dealing, bad faith, fraud or undue influence in connection with the Insurance Settlement, the Plan, or the implementation of the compromise settlement thereby. The Insurance Settlement was negotiated and proposed, and has been entered into by the parties, in good faith, from arm's-length bargaining positions, and without collusion. Each Party to the Insurance Settlement was represented by independent and experienced counsel of their own choice during the negotiations. The sale consideration to be realized by the Debtors pursuant to the Insurance Settlement with ACE is fair, reasonable and adequate. All payments to be made by ACE and any other agreements entered into by ACE in connection with this transaction have been disclosed. As

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 19 of 33

such, ACE is a good faith purchaser within the meaning of section 363(m) and a "Released Party" as defined in section 1.69 of the Plan and is entitled to all of the protections provided under section 363(m) and section 7.3 of the Plan. Neither the Debtors nor ACE has engaged in any conduct that would cause or permit the Plan, the Insurance Settlement, or the sale of the ACE Policies, to be avoided under section 363(n).

**4. The Debtors' Settlement with Safety National**

70. As set forth in section 9.4 of the Plan, Safety National has agreed to pay $4,900,000.00 (the "Safety National Payment") in order to repurchase the policies it issued to, or for the benefit of the Debtors (the "Safety National Policies") and in resolution of all claims relating to those policies. The Court finds that the Safety National Payment constitutes good and fair consideration for the sale of the Safety National Policies. Furthermore, the Safety National Policies may be sold free and clear of liens, claims, interests and encumbrances under section 363(f) because, in each case, one or more of the criteria set forth in sections 363(f)(1)-(5) have been satisfied. Without limiting the generality of the foregoing, those holders of interests in, or against any of the Safety National Policies who did not object, or who withdrew their objections, to the Plan or the relief requested therein, are deemed to have consented pursuant to section 363(f)(2). Any holder of an interest in the Safety National Policies may also be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Interest as contemplated by section 363(f)(5). Accordingly, as part of the Plan, the Court hereby approves the sale of the Safety National Policies to Safety National, free and clear of all liens, claims and interests pursuant to sections 363(b) and (f).

71. To the extent that Persons hold an interest in the individual Safety National Policies, such interest is adequately protected as required by section 363(e) by the attachment of such interest to the proceeds of sale.

72. The Debtors' Insurance Settlement with Safety National provides substantial benefits and reasonably equivalent value to the Debtors' estates, eliminates the delay, uncertainty and expense



FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

of further litigation among the Debtors, Safety National and Trust Claimants regarding the parties' obligations under the Safety National Policies or otherwise regarding the subject matter of the Agreement, and advances the orderly, economical and expeditious resolution of the Debtors' cases. The results obtained from the Insurance Settlement with Safety National are within the reasonable range of potential outcomes if the Debtors were to litigate the matters resolved pursuant to this settlement and represent a fair and reasonable consideration for the sale of the Safety National Policies. The compromise settlement ensures a substantial payment to the Debtors that will be used to enhance distributions to holders of Trust Claims against the Debtors, which payment is reasonable in relation to the potential results that could be achieved by the Debtors pursuing their claims against Safety National in litigation.

73. The sale of the Safety National Policies constitutes a good faith transfer for reasonably equivalent value and fair consideration for purposes of section 548 and/or comparable provisions of applicable non-bankruptcy law.

74. The Debtors' Insurance Settlement with Safety National is a fair, reasonable and equitable compromise and settlement of the Safety National Policies and the Debtors' claims thereunder, after consideration of: (a) the Debtors' probability of success in litigation, with due consideration for uncertainties in fact and law; (b) the complexity and likely duration of litigation and any attendant expenses, inconvenience and delay; (c) the interests of creditors; and (d) the extent to which the Insurance Settlement is the product of arm's-length bargaining and not the product of fraud or collusion. The Insurance Settlement with Safety National has been reached in good faith and, when consummated in accordance with this Order, will have been consummated in good faith. The Insurance Settlement represents a valid and proper exercise of the Debtors' sound business judgment. There has been no self-dealing, bad faith, fraud or undue influence in connection with the Insurance Settlement, the Plan, or the implementation of the compromise settlement thereby. The Insurance Settlement was negotiated and proposed, and has been entered into by the parties, in good faith, from

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 21 of 33

arm's-length bargaining positions, and without collusion. Each Party to the Insurance Settlement was represented by independent and experienced counsel of their own choice during the negotiations. The sale consideration to be realized by the Debtors pursuant to the Insurance Settlement with Safety National is fair, reasonable and adequate. All payments to be made by Safety National and any other agreements entered into by Safety National in connection with this transaction have been disclosed. As such, Safety National is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and a "Released Party" as defined in section 1.69 of the Plan and is entitled to all of the protections provided under section 363(m) and section 7.3 of the Plan. Neither the Debtors nor Safety National has engaged in any conduct that would cause or permit the Plan, the Insurance Settlement, or the sale of the Safety National Policies, to be avoided under section 363(n).

75. Any liabilities or obligations arising under the Medicare Secondary Payment Act of 1980, as amended, and/or the Medicare, Medicaid and SCHIP Act of 2007, with respect to (i) Safety National Payment, or (ii) the use of the Safety National Payment to pay Trust Claims, shall attach to the Safety National Payment. Furthermore, any rights that the Center for Medicare and Medicaid Services has with respect to the Safety National Policies shall attach to the proceeds of the Safety National Policies.

76. In any proceeding, suit or action between the Debtors or the Liquidating Trust and any insurance carrier other than Safety National, where such other insurance carrier has asserted, asserts, or could assert that it has or may have a contribution claim against Safety National, any judgment obtained by the Debtors or the Liquidating Trust against, or settlement with, such other insurance carrier shall be reduced by the amount, if any, that Safety National would have been liable to pay the other insurance carrier as a result of the other insurance carrier's contribution claim, so that the contribution claim against Safety National is thereby satisfied and extinguished.

77. In order to effectuate the preceding paragraph, the Debtors or the Trust, as applicable, shall obtain a determination from the court issuing the judgment against the other insurance carrier,

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 22 of 33

or a release in the settlement, of the amount, if any, which Safety National would have otherwise been required to pay such other insurance carrier for its contribution claim, but for the Insurance Settlement with Safety National, and shall hold any money paid by such other insurance carrier in escrow until these judgment reduction provisions can be applied.

78. Safety National shall not seek reimbursement for any payments it makes under its Insurance Settlement, whether by way of a contribution claim from any other insurance carrier, other than its reinsurers in such capacity, to the extent such other insurance carrier agrees also to waive any contribution claims against Safety National. Notwithstanding the foregoing, if a Person pursues a contribution claim against Safety National, then Safety National specifically reserves all of its contribution claims against such Person and shall be free to assert its contribution claims against such Person. The Debtors and the Liquidating Trust shall use their reasonable best efforts to obtain, from all other insurance carriers with which either or both of them executes a settlement after the Effective Date, similar agreements regarding contribution claims.

79. With respect to each of the Insurance Settlements, this Court has considered the probability of each Party's success in litigating the issues of disputed coverage under the Policies; the difficulties, if any, to be encountered in collection; the complexity of any litigation of the Asbestos Claims and the expense, inconvenience and delay necessarily attending it; and the best interests of the creditors, and finds that each compromise settlement is fair, reasonable and equitable in accordance with the requirements of Bankruptcy Rule 9019, and approval of each of the Insurance Settlements is in the best interests of the Debtors’ estates and their creditors, and will substantially enhance the Debtors’ ability to implement their Plan.

80. Notwithstanding anything to the contrary in this Confirmation Order, the Plan, the Trust Distribution Procedures, or any settlement agreement, nothing in this Confirmation Order, the Plan, the Trust Distribution Procedures or any settlement agreement (including any other provision that purports to be preemptory or supervening) shall in any way operate to impair, or have the effect

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 23 of 33

of impairing either (a) an insurer's legal, equitable or contractual rights, if any, in any respect, except to the extent that such insurer's rights are expressly impaired or limited in a settlement agreement to which it is a party, or, in the case of Continental, by section 8.3 of the Plan, or (b) the legal, equitable or contractual rights of the Debtors and/or the Liquidating Trust against the Debtors' insurers, if any, in any respect, except to the extent that such rights are expressly impaired or limited in a settlement agreement to which the Debtors and/or the Liquidating Trust are parties.

**5. The Debtors' Granting of the Continental Settlement Option**

81. As set forth in section 9.5 of the Plan, the Debtors have granted Continental the Continental Settlement Option, pursuant to which, Continental has the option at any time prior to the Effective Date, to repurchase the policies it issued to, or for the benefit of the Debtors and to resolve all claims relating to those policies in exchange for the payment of the remaining coverage limits available under those policies. The parties have agreed that the remaining limits on those policies total approximately $2.56 million (the "Continental Option Payment"). The Court finds that, if the Continental Settlement Option is timely exercised, the Continental Option Payment shall constitute good and fair consideration for the sale of the policies issued by Continental. Accordingly, the Court hereby approves and authorizes the Debtors' granting of the Continental Settlement Option and, contingent upon Continental's timely exercise of the Continental Settlement Option, approves the sale of those policies to Continental free and clear of all liens, claims and interests pursuant to sections 363(b) and (f) and finds that Continental is a good-faith purchaser entitled to the protections of section 363(m).

82. With respect to each of the Insurance Settlements and the Continental Settlement Option, if exercised, the sale of the subject insurance policies does not and will not subject or expose the Settling Insurer to any liability, claim, cause of action or remedy by reason of such transfer under (a) the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, including, without limitation, any

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

theory of tort, creditors' rights, equity, antitrust, environmental, successor or transferee liability, labor law, *de facto* merger, or substantial continuity, or (b) any employment contract, understanding or agreement, including, without limitation, collective bargaining agreements, employee pension plans, or employee welfare or benefit plans.

83. The Settling Insurers are not assuming any of the Debtors' obligations to their former employees (including without limitation any obligations under the Debtors' collective bargaining agreements, if any) by reason of the repurchase of their respective policies as part of the Insurance Settlements.

84. No common identity of officers or directors exists between the Debtors and any of the Settling Insurers or Continental.

85. The Settling Insurers are repurchasing their respective policies pursuant to the Insurance Settlements incorporated into the Plan. The Settling Insurers are not purchasing any other assets of the Debtors and are not a continuation of the Debtors or engaging in a continuation of the Debtors' business. The Settling Insurers shall not have any responsibility or liability with respect to any of the Debtors' other assets.

86. The Settling Insurers are not, and shall not be deemed to be, a successor to the Debtors by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in the Plan or otherwise. The Settling Insurers shall not assume, or be deemed to have assumed, any liabilities or other obligations of the Debtors.

87. Due and adequate notice of each of the Debtor's Insurance Settlements was provided to both known and unknown creditors.

88. The appointment of Barry A. Chatz as the initial trustee of the Liquidating Trust is hereby authorized and approved as consistent with interests of creditors and public policy. Mr. Chatz and any other individuals retained or appointed by the Liquidating Trust are authorized and directed

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 25 of 33

to perform their obligations under the Plan and Insurance Settlements, and/or any remaining obligations of the Debtors under the Plan or the Insurance Settlements.

89. Pursuant to sections 1123(b) and Bankruptcy Rule 9019(a), and in consideration of the classification, distributions, and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all the Claims and controversies resolved pursuant to the Plan.

90. Section 7.3 of the Plan provided for certain releases in favor of the Debtors, Mr. Sharp, the Debtor's officers, directors and professionals, and the Settling Insurers. Each non-debtor entity that will benefit from the releases, waivers of claims, exculpations, indemnities and injunctions contained in the Plan either shares an identity of interest with the Debtors, was instrumental to the successful prosecution of the Debtors' bankruptcy cases, provided necessary funding to the Debtors and/or has contributed substantial assets or other benefits to the Debtors' Plan, which value will allow for distributions that would not otherwise be available, but for the contribution made by such non-Debtor parties. The releases provided by certain of the Debtors' creditors under section 7.3 of the Plan are voluntary and non-coercive. Such releases, waivers, exculpations, indemnities and injunctions are essential to the Debtors' Plan and are consistent with applicable laws, and each of the impacted classes has voted to accept its proposed treatment under the Plan.

91. All releases and injunctions with respect to claims and causes of action against the Released Parties set forth in the Plan are inextricably intertwined, are an integral part of the Plan, are fair, equitable, reasonable, and in the best interests of the Debtors, the Liquidating Trust, and holders of Claims, including holders of Trust Claims, providing releases and are effective and binding on all of the Entities who may have had standing to assert such Claims or causes of action.

92. Neither the Released Parties, nor the Liquidating Trust, shall be, a successor to the Debtors by reason of any theory of law or equity, and none shall have any successor or transferee

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 26 of 33

liability of any kind or character, except that the Liquidating Trust shall assume the obligations specified in this Plan and this Order.

93. Except as otherwise provided in the Plan, on the Effective Date, title to all of the Debtors' assets and properties and interests in property, including the proceeds from the Insurance Settlements shall vest in the Liquidating Trust, free and clear of all Claims, Equity Interests, encumbrances and other interests, except as set forth in the Plan.

94. Pursuant to section 1125(d), the Debtors' transmittal of Solicitation Packages and their solicitation of acceptances of the Plan are not, and will not be, governed by or subject to any otherwise applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan of reorganization or the offer, issuance, sale, or purchase of securities.

95. Pursuant to Section 1146(c), the issuance, transfer or exchange of any security contemplated by the Plan, or the making or delivery of an instrument of transfer under the Plan, may not be taxed under any law imposing a stamp tax or similar tax.

96. Pursuant to the terms of the Plan, the Debtors shall not be reinstated as corporations or otherwise under applicable state law.

**C. Conditions to the Effective Date**

97. The Debtors have stated that they have no reason to believe that all conditions to the Effective Date will not be satisfied or duly waived in accordance with Section 14.1 and 14.3 of the Plan.

98. Due notice of the Confirmation Hearing has been given to all parties in interest.

99. The evidence presented by the Debtors at the Confirmation Hearing provided an adequate and competent basis for the findings of fact and conclusions of law contained herein.

100. Each of the conditions precedent to the entry of the Confirmation Order, as set forth in Article 14.1 of the Plan, has been satisfied or waived.

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 27 of 33

### D. Retention of Jurisdiction

101. The Court will retain jurisdiction after the Confirmation Date to determine all: (i) questions and disputes regarding title to the assets of the Debtors; (ii) disputes concerning the allowance of Claims and Interests, except as otherwise provided in the Trust Distribution Procedures or Section 8.3 hereof; and (iii) all causes of action, controversies, disputes, or conflicts, whether or not subject to any pending action as of the Confirmation Date, in which the Debtors or Liquidating Trustee seek to recover assets or otherwise pursue their rights pursuant to the provisions of the Bankruptcy Code.

102. In addition, the Court will retain jurisdiction after the Effective Date for the following additional purposes:

(a) to hear and determine any modification of this Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Court, including the Confirmation Order, in such a manner as may be necessary or appropriate to carry out the purposes and effects thereof;

(b) to assure the performance by the Liquidating Trustee of his or her obligations to make Distributions under the Plan;

(c) to issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the transactions contemplated thereunder, the Confirmation Order, or any other order of the Court, or to maintain the integrity of the Plan following Confirmation;

(d) to hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument or other document governing or relating to any of the foregoing;

(e) to construe and apply any findings of fact and/or conclusions of law made in this Confirmation Order;

(f) to adjudicate matters arising in the Cases, including matters relating to the formulation and consummation of this Plan;

(g) to enter any orders, including injunctions, as are necessary to enforce the title, rights, and powers of the Debtors and/or the Liquidating Trustee and to impose any limitations, restrictions, terms and conditions on the title, rights, and powers as the Court may deem necessary;

(h) to hear and determine any dispute involving or affecting the validity and enforceability of the discharges, releases, injunctions, and exculpatory relief set forth in Article 7 of the Plan;

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 28 of 33

(i) to enter a Final Decree closing the Cases;

(j) to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan;

(k) to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(l) to hear and allow applications for fees and expenses of Professionals pursuant to sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

(m) to adjudicate any adversary proceedings brought by the Debtors, or the Liquidating Trustee, whether or not such adversary proceedings have been commenced before or after the Effective Date;

(n) to decide issues concerning federal tax reporting and withholding that arise in connection with the confirmation or consummation of this Plan;

(o) to decide issues concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146;

(p) to adjudicate any issues concerning assumption or rejection of any executory contracts and unexpired leases, including any disputes concerning Rejection Damage Claims or Cure Claims;

(q) to hear and determine any and all objections to any Claims, including Administrative Claims, or Interests, including the allowance, classification, priority, secured status, compromise, estimation, or payment thereof;

(r) to hear and determine any litigation or causes of action belonging to the Debtors or their successors and assigns, the Estates or to the Liquidating Trust;

(s) to consider and, to the extent appropriate, approve proposed amendments to the Trust Distribution Procedures; and

(t) to hear and determine any other matter related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

**E. Confirmation of the Plan**

103. Based on the Findings and Conclusions set forth above, the Debtors' Plan is hereby confirmed.

It is SO ORDERED, ADJUDGED AND DECREED in Oakland, California.

** END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW **

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Case: 01-45483 Doc# 462 Filed: 09/07/12 Entered: 09/10/12 15:04:10 Page 29 of 33

**SERVICE LIST**

***In re CFB Liquidating Corporation*, Case No. 01-45483**
***In re WFB Liquidating Corporation*, Case No. 01-45484**

**ECF**

Margaret H. McGee
Assistant United States Trustee
OFFICE OF THE UNITED STATES TRUSTEE
1301 Clay Street, Suite 690N
Oakland, CA 94612-5217
maggie.magee@usdoj.gov

Craig Goldblatt
WILMERHALE
1875 Pennsylvania Avenue, NW
Washington, DC 20006
craig.goldblatt@wilmerhale.com

David C. Christian II
SEYFARTH SHAW LLP
131 South Dearborn Street, Suite 2400
Chicago, IL 60603-5577
dchristian@seyfarth.com

James P. Ruggeri
SHIPMAN & GOODWIN LLP
1133 Connecticut Avenue NW
Third Floor – Suite A
Washington, DC 20036-4305
jruggeri@goodwin.com

Philip R. Matthews
DUANE MORRIS LLP
One Market Spear Tower, Suite 2000
San Francisco, CA 94105
prmatthews@duanemorris.com

**ECF**

Jeff D. Kahane
DUANE MORRIS LLP
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017
jkahane@duanemorris.com

Christopher N. Kelly
STEVENS & LEE
111 North Sixth Street
P.O. Box 679
Reading, PA 19603-0679
cnk@stevenslee.com

Leonard P. Goldberger
STEVENS & LEE
1818 Market Street
29th Floor
Philadelphia, PA 19103
lpg@stevenslee.com

Andrew K. Epting, Jr.
ANDREW K. EPTING, JR., LLC
Three State Street
Charleston, SC 29401
ake@epting-law.com

John E. Rodewald
BATES & CAREY LLP
191 North Wacker Drive, Suite 2400
Chicago, IL 60606
jrodewald@batescarey.com

Jason T. Shipp
GOLDBERG PERSKY & WHITE, P.C.
1030 Fifth Avenue, Third Floor
Pittsburgh, PA 15219-6295
jshipp@gpwlaw.com
mmccalister@gpwlaw.com

**ECF**

ACE Property & Casualty Insurance Co.
c/o Armen K. Hovannisian
AIWASIAN & ASSOCIATES
725 South Figueroa Street, Suite 1050
Los Angeles, CA 90017
armen.hovannisian@mclolaw.com

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654

Thomas M. Wilson
KELLEY AND FERRARO LLP
2200 Key Tower
127 Public Square
Cleveland, OH 44114
twilson@kelley-ferraro.com

Young Charity Trust
c/o Maureen M. Crough
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
mcrough@sidley.com

**ECF**

David M. Wiseblood
WISEBLOOD LAW
101 Montgomery Street, Suite 2700
San Francisco, CA 94101
dwiseblood@wisebloodlaw.com

Alan R. Brayton
Christina C. Skubic
BRAYTON PURCELL, LLP
222 Rush Landing Road
Novato, CA 94948-6169
abrayton@graytonlaw.com
cskubic@braytonlaw.com

Michael B. Serling
MICHAEL B. SERLING, P.C.
280 North Old Woodward Avenue
Suite 406
Birmingham, MI 48009-5309
mserling@serlinglaw.com

John A. Baden IV
Jeanette M. Gilbert
MOTLEYRICE LLP
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
jbaden@motleyrice.com
jgilbert@motleyrice.com

Malcolm Appelbaum
GLOBE METALLURGICAL, INC.
One Penn Plaza
250 West 34th Street
New York, NY 10119
mappelbaum@glbsm.com

William P. Coley, II
Elizabeth Perkins
GLOBE METALLURGICAL, INC.
1595 Sparling Road
P.O. Box 157, Country Road 32
Beverly, OH 45715
coley@globemetallurgical.com
perkins@globemetallurgical.com

Margaret Holman Jensen
ZAMLER, MELLEN AND SHIFFMAN
23077 Greenfield
Advanced Building, Suite 557
Southfield, MI 48075-3709
mjensen@zmslaw.com

Steve Baron
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
sbaron@baronbudd.com

**ECF**

Alan B. Rich
LAW OFFICE OF ALAN B. RICH
4244 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
arich@alanrichlaw.com

John R. Climaco
CLIMACO, WILCOX, PECA, TARANTINO & GAROFOLI CO., L.P.A.
55 Public Square, Suite 1950
Cleveland, OH 44113
jrclim@climacolaw.com

Elizabeth Heller
GOLDENBERG HELLER ANTOGNOLI & ROWLAND
2227 South State Route 157
Edwardsville, IL 62025
elizabeth@ghalaw.com

Todd Barnes
GEORGE & FARINAS
F/K/A GEORGE & SIPES, LLP
151 North Delaware Street, Suite 1700
Indianapolis, IN 46204
tb@lgkflaw.com

Allen D. Vaughan
CASCINO VAUGHAN LAW OFFICES, LTD.
220 South Ashland Avenue
Chicago, IL 60607
avaughan@cvlo.com

John I. Kittel
MAZUR-KITTEL PLLC
30665 Northwestern Highway, Suite 175
Farmington Hills, MI 48334
jkittel@mazur-kittel.com

Bradley D. Sharp
DEVELOPMENT SPECIALISTS, INC.
333 South Grand Avenue, Suite 4070
Los Angeles, CA 90071-1544
bsharp@dsi.biz

SECURITIES AND EXCHANGE COMMISSION
San Francisco Regional Office
Marc J. Fagel, Regional Director
44 Montgomery Street, Suite 2600
San Francisco, CA 94104
sanfrancisco@sec.gov

**ECF**

Amy Casbeer
NIX, PATTERSON & ROACH, L.L.P.
205 Linda Drive
Daingerfield, TX 75638-2107
amycasbeer@nixlawfirm.com

Allen Graves
LAW OFFICE OF GRAVES AND ALLEN
436 14th Street, Suite 1400
Oakland, CA 94612

Peter J. Ashcroft
BERNSTEIN LAW FIRM, PC
Suite 2200 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219-1900

Steven Kazan
KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, PLC
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607
skazan@kazanlaw.com

**ECF**

Leonard D. Drubach
LD LAW OFFICES
P.O. Box 8061
Foster City, CA 94404
zlaw578@yahoo.com

LAW OFFICE OF JAMES HESSION
202 North Saginaw
Saint Charles, MI 48655

Gregory Stamos
ROSE, KLEIN & MARIAS LLP
12800 Center Court Drive, Suite 500
Cerritos, CA 90703-9367
npierson@rkmlaw.net

Patrick J. Bartels
KEEFE BARTELS, L.L.C.
170 Monmouth Street
Red Bank, NJ 07701
pbartels@keefebartels.com

TOYOTA MOTOR CREDIT CORPORATION
19001 South Western Avenue
P.O. Box 2958
Torrance, CA 90501

DEPARTMENT OF THE TREASURY
Insolvency Group 1
1301 Clay Street, Stop 1400S
Oakland, CA 94612

Andrew Sklar
SKLAR – MARKIND
102 Browning Lane
Building B, Suite 1
Cherry Hill, NJ 08003

Jennifer Witherell Crastz
HENAR, ROUSSO & HEALD, LLP
15910 Ventura Boulevard
12th Floor
Encino, CA 91436

Brian J. Meginnes
ELIAS, MEGINNES, RIFFLE & SEGHETTI, P.C.
416 Main Street, Suite 1400
Peoria, IL 61602

FRANKGECKER LLP
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, ILLINOIS 60654